**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **CRIMINAL ACTION NO.** |
| v. | ) | **2:09-cr-054-WKW** |
| | ) | **[wo]** |
| DERRICK LASHAUN HALL | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court is the Defendant's *Motion to Suppress Search and Seizures* (Doc.12, filed 5/27/09), and the Government's *Response to Defendant's Motion to Suppress* (Doc. 20, filed 6/5/09). Defendant Derrick Hall (hereinafter "Hall" or "Defendant") seeks to exclude the physical evidence obtained as a direct or indirect result of his encounter with law enforcement on September 21, 2008. After the evidentiary hearing and due consideration of briefs, arguments, exhibits, and applicable law, the Magistrate Judge recommends that the District Court **DENY** the motion to suppress.

### I.  FINDINGS OF FACT

Sergeant Tom Birtley ("Birtley") is a deputy sheriff in the Lowndes County Sheriff's Department (LCSD), where he supervises the canine unit. Birtley testified drivers' license checkpoints lessen the traffic fatalities from speeding and drivers under the influence (of alcohol or controlled substances). Birtley said he organized checkpoints with federal grant funds received through the Alabama Department of Economic and Community Affairs (ADECA). ADECA sets forth operational guidelines for the checkpoints and provides signs

to alert motorists to the checkpoints as they approach. The LCSD scrupulously complies with ADECA guidelines in anticipation of audit and oversight inquiries. The deputies' procedure at checkpoints entails a brief check of all motorists' license, insurance, and registration, after which they are permitted to continue.

On the evening of Saturday, September 20, 2008, the LCSD set up a checkpoint at Mason Road and County Road 26, a major north-south thoroughfare in and out of Lowndes County. Birtley said all drivers traveling through the checkpoint were stopped and asked to produce license, insurance, and registration. Around 12:30 or 12:45 a.m. on September 21, 2009, Birtley saw a white car approach the checkpoint very slowly and turn off the road into a driveway approximately 200 yards from where he stood. Birtley had been assigned to patrol this particular area of the county for approximately one and a half years, and he knew the driveway led to two residences. One residence had been vacant since 2007, and the other belonged to an elderly couple who own a black car. Birtley saw the white car approach the vacant residence. In an area Birtley described as a hayfield, the white car turned its headlights off. Birtley then went to his car and drove to the white car. Birtley drew his weapon and flashlight as he approached the car, and saw it was occupied by two males, with defendant Hall in the driver's seat. The passenger had what appeared to be marijuana leaves sprinkled on the front of his shirt.

Birtley radioed for backup and specifically requested LCSD Investigator Tyrone Campbell ("Campbell") to come to the scene because he had previous experience as a member of a drug task force. Campbell arrived in 15 to 20 seconds, whereupon the officers

asked Hall and his passenger to get out of the car. Birtley walked his canine around the car, and the dog alerted on the driver's door. Hall and his passenger were then handcuffed for safety. Birtley searched the car and found marijuana residue such as seeds and stems. Birtley then used his flashlight to search the area around the car for any contraband which may have been thrown out the window. During this search, and while Campbell was reading Hall his *Miranda* rights, the sheriff drove up. Birtley told the sheriff that Hall and his passenger were possible "turnarounds." Hall told Campbell he left the road before reaching the checkpoint because he was driving without a license, and that he threw a firearm out of the car. The sheriff found the firearm approximately eight to ten feet from the left side of Hall's car. Birtley issued a ticket to Hall for driving with a revoked license.

On March 25, 2009, the Grand Jury for the Middle District of Alabama indicted Hall for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *See* Doc. 1. On May 27, 2009, Hall filed a motion to suppress evidence discovered during the search and statements taken by law enforcement. *See* Doc. 12. Hall's *Motion* asserted the checkpoint was unlawful under the Fourth Amendment, the search of his car was unconstitutional (and any evidence or statements resulting therefrom are excludable), and the statement he made concerning the firearm was involuntary because he was intoxicated and could not give a knowing waiver of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

The Court heard argument and received evidence from the parties on June 9, 2009. During the hearing, Hall conceded that he abandoned the firearm when he threw it from the

car window, and withdrew the argument that his statement to Campbell should be suppressed based on intoxication. Hall asserted "that his attempt to avoid that checkpoint did not provide probable cause or - even less, reasonable suspicion - for Detective Birtley" to investigate his exit from the checkpoint traffic. Consequently, the remaining issue before the Court is whether Detective Birtley had reasonable suspicion to investigate Hall's departure from the checkpoint line.

## II.  DISCUSSION AND ANALYSIS

"The Fourth Amendment requires that searches and seizures be reasonable. A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 521 U.S. 32, 37, 121 S.Ct. 447, 451 (2000). A vehicle stop at a sobriety checkpoint constitutes a "seizure" for Fourth Amendment purposes. *Edmond*, 521 U.S. at 40, citing *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 450, 110 S.Ct. 2481, 2485 (1990) (upholding brief, suspicionless searches at a sobriety checkpoint aimed at removing drunk drivers from the road). The *Edmond* Court recounted its decisions recognizing "limited circumstances in which the usual rule [for reasonable suspicion] does not apply," and includes those approving checkpoint programs which were "designed primarily to serve purposes closely related to  . . . the necessity of ensuring roadway safety." *Id*. at 37, 41; *see also Sitz*, *id*.; *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391 (1979) (finding stops by roving patrols invalid without reasonable, articulable suspicion for the seizure). In *Prouse*, the Court emphasized that lawful checkpoints are those which question "all oncoming traffic" in the interest of highway safety, as opposed to discretionary

checks of selected motorists. *Prouse*, 440 U.S. at 663. *See also Merrett v. Moore*, 58 F.3d 1547, 1551 n.2 (11th Cir. 1995) (citing *Prouse* to explain that properly conducted checkpoint stops apply to all motorists without selective targeting.)

The threshold issue raised by Hall's *Motion* is whether the LCSD checkpoint was legal. (Doc. 12, at 3-4.) The evidence shows the checkpoint was set up to promote highway safety by deterring speeding or impaired drivers, and that all motorists were stopped for document verification. Therefore, the Court finds the checkpoint was appropriate. However, over the course of the hearing, it became clear that Hall was not "seized" at the checkpoint itself, but encountered police on the private drive where he turned before reaching the checkpoint. Therefore, the circumstances of this encounter must be examined for reasonableness. The "reasonable suspicion" standard is less demanding than probable cause, but requires more than an "inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989), citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883 (1968). *Sokolow* directs courts to consider "the totality of the circumstances - the whole picture" when evaluating the validity of officers' actions. 490 U.S. at 8, quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695 (1981). "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same - and so are law enforcement officers." *Sokolow, id*. at 8. *See also United States v. Hernandez*, 418 F.3d 1206, 1211 (11th Cir. 2005)(noting officer's duty to investigate where reasonable

suspicion exists).

Birtley gave credible testimony as to his reasons for approaching Hall. At approximately 12:45 a.m., Birtley saw Hall drive a white vehicle into a drive where he knew one residence was vacant, and the other occupied by elderly residents who own a black car. He then saw the car turn off its lights in the hayfield adjoining the vacant residence. His experience as a law enforcement officer, and particular knowledge of the residences in the immediate vicinity of the checkpoint area, created a reasonable suspicion that the occupants of the white car may have been involved in criminal activity, such as burglary. The Court finds these facts support Birtley's decision to investigate further, as driving up to a vacant house located in a hayfield, after midnight, with no lights on, constitutes suspicious behavior.

The chain of events from that point snowballed - Birtley's approach of Hall's car with his flashlight gave him a plain-view sighting of a substance he suspected was marijuana and his canine alerted on the driver's side door of Hall's car. While Hall and his passenger were detained for safety, and after Campbell read and explained Hall's rights to him, Hall told Campbell that his license was revoked and that he had already thrown a firearm out of his car. The search for discarded contraband led to the discovery of Hall's abandoned firearm. "The 'plain view' doctrine allows a warrantless seizure where '(1) an officer [was] lawfully located in the place from which the seized object could be plainly viewed and [had] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.'" Birtley was lawfully present at the darkened vehicle because of the reasonable suspicion raised by its movement in the hayfield. Law enforcement officers have

familiarity with the appearance of marijuana, and the canine alert bolstered Birtley's suspicion that the substance was, in fact, marijuana. Although not specifically challenged by Hall's *Motion*, Birtley's use of a flashlight in the dark does not prevent the application of the plain-view doctrine. *See United States v. Purves*, 768 F.2d 1237, 1238 (11th Cir. 1985) (officer's use of flashlight to aid vision does not undermine plain-view observation.).

A "turnaround" case with similar facts was under review in *United States v. Smith*, 396 F.3d 579 (4th Cir. 2005). In that case, officers conducting a license checkpoint during the wee hours of the morning saw a driver hit his brakes and turn into a private drive. The driver then stopped the car "more than 200 feet from the public road but still some distance from the residence." *Smith*, 396 F.3d at 585. An officer approached to investigate with lights on, whereupon the car did not stop, but proceeded around the curve in the drive before stopping. Officers found that defendant was not only driving on a revoked license, but was in possession of a loaded magazine for a 9-millimeter handgun (having thrown a firearm out of the car), and a small quantity of cocaine base. Following *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673 (2000), the Fourth Circuit applied a reasonable suspicion analysis to defendant's initial acts of evasive behavior (avoiding the checkpoint), and held "unsafe or erratic driving or behavior indicating the driver is trying to hide from officers" may be taken into account in determining whether reasonable suspicion exists for further investigation. *Smith*, *id*. This Court's finding of reasonable suspicion is based upon Hall's turn into the drive and parking a darkened car at a vacant residence - acts which may be viewed as erratic behavior taken in an attempt to hide from the deputies conducting the checkpoint.

Hall claims he had a right to exit the checkpoint line without investigation by sheriff's deputies. He seeks support for this position in *United States v. ACEF*, 308 F.3d 820 (8th Cir. 2002), and *United States v. Lester*, 148 F.Supp.2d 597 (D.D. 2001). *ACEF* does not aid Hall because the checkpoint in that case was an invalid, "ruse checkpoint" established for the sole purpose of checking the motorists who exited the highway before reaching the "checkpoint." The officers then stopped all motorists who exited, whether or not their actions were an attempt to avoid a checkpoint. *ACEF*, 308 F.3d at 828-29. The officers in that case lacked reasonable suspicion to investigate simply because defendant's car exited after being notified that a checkpoint lay ahead. The *Lester* decision also fails to support Hall's argument because that case found the simple act of a evading a checkpoint does not provide reasonable suspicion for further investigation, and stated the Fourth Amendment requires a case-by-case consideration of all the facts in checkpoint turnaround cases. Indeed, the discussion in *Lester* cited *Smith v. State*, 515 So.2d 149 (Ala.Crim.App. 1987), which found reasonable suspicion where a driver evaded a checkpoint by entering a private drive, but remained in the car after turning off his lights. *Lester*, 148 F.Supp.2d at 601.

The facts of this case support a finding of reasonable suspicion for Birtley's investigation of Hall. As suggested by *Lester*, consideration of all available facts, including Birtley's particularized knowledge of the area, indicate Hall's behavior merited further investigation. The facts demonstrate a valid basis for Birtley's actions in this case.

### III.  CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the **RECOMMENDATION**

of the Magistrate Judge that Defendant's *Motion to Suppress Evidence* (Doc. 12) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **July 27, 2009.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 14th day of July, 2009.

> /s/ Terry F. Moorer
> TERRY F. MOORER
> UNITED STATES MAGISTRATE JUDGE